STONE, C.J.
We affirm Appellant’s conviction for the first-degree murder of his seventy-six-year-old next-door neighbor, Frank Morris. Appellant claimed self-defense. We conclude that errors, if any, with respect to admission of bad character and hearsay evidence were not prejudicial.
The record reflects a lengthy history of Appellant making unsubstantiated accusations against the victim. Appellant had accused Morris of planning to blow up his house. He had also accused Morris of placing an explosive device in a pack of cigarettes which, burned Appellant’s mother’s hand, although there was no evidence to support such a claim.
A few days before the shooting, a neighbor witnessed an argument between Appellant and Morris. Morris threatened to call the police if Appellant did not stop harassing him. Appellant stated, “You call the police. I’ll kill you.” Two days before the shooting, Appellant called the police because he believed that Morris was standing outside his bedroom window threatening to light a fire in his garage. The police investigated this accusation and concluded that nothing had happened. Later that night, Mrs. Morris confronted Appellant about the incident, stating “It has got to stop.” Appellant responded, ‘Tes, sir. It is going to stop. You are going to wake up to a dead husband.”
Gus Sinabaldi, a co-worker, testified that Appellant called him on the day of the homicide although they had not been on speaking terms for at least a year. Sinabaldi explained that their friendship had terminated when Appellant falsely accused another coworker of stealing money from her cash register. During that phone call, Appellant asked Sinabaldi whether he had a gun. Appellant told Sinabaldi that “there was going to be ‘trouble,’ and ‘a war,’ ” and mentioned Morris’s name. He stated, “Tonight is the night.”
That evening, Appellant called 911 and reported that he had found Morris in the yard and that “there [was] blood around.” When the paramedics and police arrived, they found the victim in his own backyard, dead, from multiple gunshot wounds. Appellant repeated to the investigating officers that he had found the body lying there when he came home from work.
When questioned, Appellant initially said that he did not know anything about the shooting. Appellant informed Detective Thomasevich that he had been doing odd jobs at a neighbor’s house all day. He stated that he did not think the police would be able to speak with the owner of the house because she was not home. While Appellant was being questioned, another officer was cheeking Appellant’s alibi. When Appellant was advised by the detective that the owner of the house had reported that Appellant had not been working there, Appellant responded that she was lying. However, shortly thereafter, Appellant changed his story, saying “I will tell you what happened, but it was self-defense.” Appellant stated that he caught the victim trying to get into his garage to light a fire.
Appellant shot Morris four times with a .22 caliber revolver. When asked why Morris was found in his own backyard, Appellant stated, “Because he got shot while he was running away. And then, then he ah, he didn’t go down,” and, “I thought he was going to come after me again. So I just emptied it.”
Before calling 911, Appellant drove to a canal, about 1.7 miles away, and disposed of the gun. The police were able to retrieve the gun as well as four shell casings, which Appellant had hidden in a pipe and a flower planter. The police found no signs of a forced entry into Appellant’s garage and no signs of flammable liquid or lighting implements. The police also found no blood anywhere around the garage.
The state’s pathologist testified that the victim was shot once in the back, once in the *341 chest, and twice in the face. The shot to the back severed Morris’s spinal cord and would have caused Morris to drop to the ground. The pathologist stated that the chest and facial wounds indicated that Morris was shot while lying down. She also concluded that blood would have been found elsewhere at the crime scene had the facial wounds been inflicted anywhere but the location the body was found.
The record reflects that the state was allowed to inquire of Sinabaldi, one of Appellant’s co-workers, why he had broken off a friendly relationship with Appellant a.year earlier. Sinabaldi testified that Appellant had accused another worker of stealing twenty dollars out of her register. However, when a check was immediately made of the register, it was not short. The state contends that this testimony was relevant to rebut Appellant’s self-defense theory because it buttressed the fact that Appellant had a tendency to make false accusations.
Evidence of a person’s character offered to prove action in conformity with it on a particular occasion is inadmissible under section 90.404(1), Florida Statutes (1997). The limited exceptions to this rule are not applicable here. Further, evidence that tends only to show a person’s bad character or propensities is not admissible. See Moore v. State, 701 So.2d 545 (Fla.1997), cert. denied, — U.S. -, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998).
Even if the evidence here did not serve any purpose other than to show that Appellant was either paranoid or a liar, Appellant has the burden on appeal, pursuant to section 924.051(7), Florida Statutes, of demonstrating that a prejudicial error occurred. In light of the fact that the jury obviously did not believe the self-defense claim, this bad character evidence arguably could have affected their judgment. However, the record contains no credible evidence to support the self-defense claim, and all of the state’s physical evidence points to the conclusion that the incident could not have taken place as Appellant had described it. Moreover, the state presented substantial evidence that the shooting was premeditated.
We need not address the claimed error, if any, in allowing the disclosure that the owner of the house had discredited Appellant’s alibi, as such was patently not a prejudicial error given Appellant’s subsequent admission that he had initially lied and that he shot the victim. § 924.051, Fla. Stat. (1997).
WARNER and GROSS, JJ., concur.