789 So.2d 1016 (2000)
Michael HENDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-3950.
District Court of Appeal of Florida, Second District.
December 27, 2000.
Rehearing Denied January 26, and April 5, 2001.
James Marion Moorman, Public Defender, and Susan Martin, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
PARKER, Acting Chief Judge.
Michael Henderson appeals his convictions and sentences for three counts of robbery with a firearm while wearing a mask, one count of burglary of a dwelling with a firearm while wearing a mask, and one count of attempted robbery with a firearm while wearing a mask. We affirm without comment all three felony convictions in circuit court case number 98-06923 involving offenses committed against Daniel and Maryann Ruttenbur and Douglas J. Carman (the Ruttenbur robbery). However, we reverse the two convictions in circuit court case number 98-07002 involving offenses allegedly committed against Sam and Jenny Baca (the Baca robbery) and remand for a new trial in that case. Because Henderson was sentenced under one scoresheet, this reversal will require Henderson to be resentenced for the Ruttenbur robbery.
*1017 There is no doubt that one evening in November 1998 Sam Baca, then police chief of Lakeland, was robbed at gunpoint in his own yard by a gunman wearing a hockey mask. This same gunman attempted to rob Baca's wife and then ordered both Bacas to the ground and fled. Later that same evening, a gunman wearing a hockey mask entered the Ruttenburs' garage as they were getting out of their car and robbed them at gunpoint. Carman, who was with the Ruttenburs at the time, chased the gunman as he fled in a white car. Carman was able to get the license plate number of the car, and he gave that information to police. The next day, Henderson and two codefendants were arrested and charged with both robberies.
When Henderson was questioned by the police, he admitted to committing the Ruttenbur robbery. However, Henderson denied committing the Baca robbery. Henderson admitted that he was in the getaway car at the scene of the Baca robbery, but stated that one of his codefendants had worn the mask and actually committed the robbery. The police were unable to find any physical evidence connecting Henderson to the Baca robbery. Thus, the only evidence presented at trial to establish that Henderson committed the Baca robbery was the testimony of Henderson's codefendant, Danny Perkins.
Henderson's trial was severed from that of his codefendents, and the charges on both robberies were consolidated for trial. Baca was the first witness to take the stand for the State at the trial. Over Henderson's objection, the trial court permitted the State to elicit testimony from Baca concerning his rise through the ranks of the Albuquerque Police Department, from which Baca had retired as chief after twenty years of service. Baca then testified about his move to Lakeland, where he became chief of police in 1990. Following this "background," the State asked Baca about the robbery. In describing how the robbery was accomplished, Baca testified:
Q. [By Mr. Talbot, the prosecutor]: Were you able to look directly at him just like you are looking at me?
A. [By Mr. Baca]: For short periods of time.
Q. Then he said, "Turn back around"?
A. Every time I tried to turn around, he would tell me, "Don't turn around. I will blow your head off." And he used some profanity.
Q. When you were approaching your wife's car, first of all, how far did you end up walking before you got there?
A. I would say close to 45 feet or so, perhaps maybe 40.
Q. During the time you were going to your wife's car, how did that take place? If I am still the assailant,
A. He kept moving. Like, if you were me, he was kind of likeHe knew what he was doing, so I figured he had done this before.

(Emphasis added.) At this point, the jury was excused and Henderson moved for mistrial, alleging prejudice from this last comment and noting that Baca had made similar comments in deposition which the State had agreed were improper. While the State conceded that Baca's comment at trial was improper, it argued that the comment was not sufficiently prejudicial to warrant a mistrial. The trial court stated that Henderson's motion presented a close call, but ultimately denied the motion for mistrial. It is this ruling that Henderson now appeals.
We begin by noting that the State has essentially conceded that Baca's comment was improper. This concession is correct. See, e.g., Baskin v. State, 732 So.2d 1179 (Fla. 1st DCA 1999) (holding that testimony concerning general criminal behavior *1018 based on a law enforcement officer's experience and investigation in other cases is inadmissible); Florio v. State, 554 So.2d 633 (Fla. 4th DCA 1989) (noting that while a police officer can properly describe his direct observations, his opinion based on those observations as to whether the defendant had sold drugs before is impermissible). Thus, the only question we must answer is whether the trial court abused its discretion in denying Henderson's motion for mistrial. Considering all of the circumstances in this case, we conclude that the trial court did abuse its discretion.
"A motion for mistrial should be granted when it is necessary to ensure that the defendant receives a fair trial." Cornatezer v. State, 736 So.2d 1217, 1218 (Fla. 5th DCA 1999); see also Power v. State, 605 So.2d 856, 861 (Fla.1992). The improper admission of evidence concerning a defendant's prior criminal history is frequently too prejudicial for the jury to disregard, regardless of any curative instruction given by the trial court. See Cornatezer, 736 So.2d at 1218. When any curative instruction would be insufficient, the trial court should grant a mistrial.
In Cornatezer, a police officer testified that Cornatezer was a convicted felon. Id. Defense counsel immediately objected. Id. The trial court sustained the objection and gave a curative instruction but denied Cornatezer's motion for mistrial. Id. The Fifth District reversed, noting that Cornatezer's right to a fair trial was compromised by the officer's statement because it placed Cornatezer's character at issue. Id. at 1218. The court noted:
Character was a central issue in this case because the defense case centered on the credibility of Mr. Cornatezer, who gave exculpatory statements to the police, while the state's case relied on the credibility of Mr. Cornatezer's roommate, who testified that Mr. Cornatezer had committed the crimes. Defense counsel's theory was that the roommate had committed the crimes alleged. The court's curative instruction could not "unring the bell" with regard to the disclosure of Mr. Cornatezer's past criminal history....
Id. at 1218-19.
Similarly, in Dawkins v. State, 605 So.2d 1329 (Fla. 2d DCA 1992), this court reversed the defendant's conviction after the State asked Dawkins on cross-examination, "You're not supposed to have a firearm, are you, Mr. Dawkins?" This court noted that the question itself suggested that Dawkins was guilty of an uncharged collateral crime. Id. at 1330. Because Dawkins' only defense was self-defense and because the jurors would be less likely to believe Dawkins was defending himself if they knew that he had committed other unlawful acts, this court held that the trial court should have granted the mistrial and reversed for a new trial. Id.
In this case, as in Cornatezer, character was a central issue. Henderson gave exculpatory statements to the police concerning the Baca robbery. The State's case against Henderson as to the Baca robbery relied exclusively on the testimony of Henderson's codefendant, Danny Perkins. Henderson's defense was based on the theory that either Perkins or the other codefendant had actually committed the Baca robbery. Given Henderson's exculpatory statements, the complete lack of physical evidence tying Henderson to the crime, and the defense theory of the case, Baca's statement that his assailant knew what he was doing and had done this before was highly prejudicial and denied Henderson a fair trial. As in Dawkins, the jurors would be less likely to believe Henderson's version of events if they believed that Henderson had "done this before" or committed other unlawful acts. No curative instruction could "unring this bell." Because Henderson's credibility *1019 was critical to the jury's resolution of the charges stemming from the Baca robbery, Baca's comment was not harmless. We therefore conclude that the trial court abused its discretion in denying Henderson's motion for mistrial as to the charges stemming from that robbery.
The same cannot be said for the charges stemming from the Ruttenbur robbery. Henderson admitted in a taped statement to the police that he had participated in the Ruttenbur robbery. Thus, unlike with the Baca robbery, resolution of the charges arising from the Ruttenbur robbery did not depend solely on a credibility contest between Henderson and Perkins. Under the totality of the circumstances, we conclude that Baca's comment was harmless as to charges arising out of the Ruttenbur robbery.
We affirm Henderson's convictions for the two counts of robbery with a firearm while wearing a mask and the count of burglary with a firearm while wearing a mask that stem from the Ruttenbur robbery. We reverse Henderson's convictions for robbery with a firearm while wearing a mask and attempted robbery with a firearm while wearing a mask that stem from the Baca robbery and remand for a new trial on those charges. Because the trial court scored the convictions for both robberies on one sentencing guidelines scoresheet and used only that scoresheet in sentencing Henderson, the trial court must resentence Henderson on the convictions arising from the Ruttenbur robbery using an amended scoresheet.
Affirmed in part, reversed in part, and remanded.
ALTENBERND and SALCINES, JJ., concur.