POLEN, J.
This appeal arises from a final delinquency disposition order finding A.K., a child, to have committed the delinquent act of battery on a person sixty-five years of age or older. We affirm, holding that any error committed by the trial court in admitting evidence of A.K.’s reputation or character was harmless.
A.K. attacked Nick DeMasi, a crossing guard at Plantation Middle School, on the morning of May 21, 2003. DeMasi was born on March 13, 1931, making him seventy-two years old. DeMasi testified that A.K. hit him “for no reason at all” while he was working. At the time, DeMasi was wearing his crossing guard uniform — blue pants, blue shirt, a reflective vest, and a hat — and was carrying a sign. DeMasi testified that A.K. grabbed him, pushed him, shook him, and knocked the stop sign out of his hand.
Deputy James Barder of the Broward County Sheriffs Office, who happened to be passing by in an unmarked car and out of uniform, saw A.K. “throwing punches at the crossing guard.” Barder saw A.K. punch DeMasi in the chest at least twice with a closed fist. DeMasi was trying to back away from A.K. and was not swinging his sign at A.K. Barder stopped and approached the scene. Barder testified on cross-examination that he did not see how the incident started and that it is possible that DeMasi hit A.K. first. Upon seeing an adult approaching, two other juveniles attempted to pull A.K. from the scene and towards school. Barder handcuffed A.K. and radioed the Plantation police.
Plantation police officer Lori Primeau arrived on the scene, arrested A.K., and interviewed Barder and DeMasi. A.K. was charged by petition for delinquency with battery on a person sixty-five years of age or older.
At trial, A.K. testified to a different set of events. The day before the alleged attack, A.K. and his “friends from the program called Crawford” were walking to school. A.K. pushed the button to cross the street and the crossing guard told him to stop pushing the button. A.K. kept pushing the button anyway and the crossing guard began cussing at him. A.K. began cussing back. The crossing guard came at A.K. and swung his sign at him. A.K. then went to school. After school, A.K. told his therapist what happened and he showed her the pants the guard allegedly hit with the sign. The pants were introduced into evidence. The sign went through the fabric but did not break A.K.’s skin. A.K. said that the crossing guard hit him twice with the sign. The pants had four holes in them. After A.K. told the therapist about the alleged incident, the therapist let A.K. call his father, who told him to tell the principal.
As A.K. walked to school the next day, intending to tell the principal about the prior day’s incident, he again kept pushing *1115 the button to cross the street after the crossing guard told him to stop. The crossing guard came at A.K. again with the sign and this time A.K. caught it and threw it. The crossing guard then came at A.K., grabbed him by the throat and started choking him, then hit A.K. repeatedly in the chest. A.K. tried to back away and did not fight back. The crossing guard then backed away. A.K. started cussing at the crossing guard again, walked out to him, and slapped the crossing guard’s hat off of his head. A.K. was trying to distract the crossing guard so that he could try to get away. A.K. testified that there were red marks on his neck, but that the officer did not check him for injuries. However, Deputy Barder testified that he did not notice any injuries on A.K. and that A.K. did not complain of any injuries. A.K. also testified that he did not strike The crossing guard at all, not even in self-defense.
On cross-examination, the state challenged A.K.’s version of the events:
Q: He just told you to stop pushing the button?
A: Yes.
Q: Okay. Isn’t it true that you heckled and harassed him verbally as well that day?
A: Yeah.
Q: Isn’t it true that you had friends with you on that day too, correct?
A: Yes.
Q: And isn’t it true that those friends say you’re a bully?
A: Maybe I am.
Defense counsel objected on grounds that it was irrelevant, hearsay, and a violation of the confrontation clause. The court ruled that the testimony was admissible:
even absent the testimony of the person that supposedly said it. I mean in this case he’s charged with the offense of battery on an elderly person or battery. Obviously his character is at issue. The defendant testifies as to his reputation. His own testimony as to his reputation is that he’s a bully or he has a reputation of being a bully. That’s a particular trait in this trial, whether or not, you know, he has that kind of reputation. He testifies that it’s his own character trait.
The court also explained:
I’ll tell you why — Well, first of all, I allowed the testimony in, and it’s the defendant who said it. It’s not somebody else who said it. He says that “Maybe I am,” when he’s asked if he’s a bully, or “Isn’t it true that your friends say you’re a bully,” he says, “Maybe I am.” At this juncture, it doesn’t really matter what his friend says one way or the other. He’s already testified to it. Like I said, you can talk to him on redirect.
A.K. moved for a mistrial based on the use of infamous character evidence, reputation evidence, and violation of the confrontation clause. The trial court denied the motion.
Later in the trial, A.K. testified, “I was living in the program then. So after school, you know, I told my therapist.” The trial judge intervened and asked A.K. what program he was in at that time. After A.K. testified that he was in Crawford House, the state asked what type of program that is. A.K. answered that it is a sexual offender program. Both the state and defense counsel moved to strike. The court granted the motion to strike. Defense counsel then moved for a mistrial, which the court denied.
At the close of the evidence, A.K. renewed his motions for mistrial based on hearsay, violation of the confrontation clause, impermissible reputation evidence, and on evidence regarding the child being in a sexual offender program. The court denied the motions, stating: “I think if it was in front of a jury, you’d probably have *1116 an arguable motion, but, you know, the benefit of having a court here, it’s irrelevant. It means nothing to me.”
Before the trial judge made his final ruling on the case, he explained that he heard what the witnesses had to say, judged their credibility, and used common sense. He noted that DeMasi appeared to be 72 years of age and had a very short gait, consistent with somebody who gets older. The judge also noted that DeMasi did not appear to embellish anything in his testimony. The judge found his testimony believable. The judge found that DeMa-si’s testimony was consistent with Deputy Barder’s testimony. He found that all of the state’s witnesses were extremely credible because their testimony was very consistent and did not indicate prejudice or bias. The judge thought Deputy Barder was extremely credible in his testimony regarding viewing the incident.
The judge stated that “to the extent that there’s any conflict in the testimony between the defendant and the testimony of the victim and Deputy Barder, I believe the testimony of Deputy Barder, and I believe the testimony of the victim.” The judge believed there were multiple instances in which A.K. was lying. He believed A.K. lied when he talked about the incident the prior day and the damage to his pants. Additionally, he pointed out the defense argued self-defense, but A.K. did not even admit that he hit the crossing guard, only that he slapped off his hat as a result of the crossing guard choking and punching him. He also listed the facts that A.K. admitted:
He admits that he cussed at the person. He admits that he attempted to harass him and heckle him. He admits that he was angry as a result of the incident that happened the day before. He admits he’s fast. He admits he’s athletic. He says he didn’t retaliate against this man. The only thing he did was slapped his hat off.
The trial court entered a final delinquency disposition order finding A.K. to have committed battery on a person sixty-five years of age or older. Adjudication of delinquency was withheld and A.K. was placed on juvenile probation. A.K.’s two- and-a-half year probation included completing 100 hours of community service work, writing an apology to the victim, and continued counseling, including family counseling and anger management training.
On appeal, A.K. argues that the trial court erred in allowing testimony regarding his reputation and character. “Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion.” Ray v. State, 755 So.2d 604, 610 (Fla.2000).
A.K. argues that the trial court erred because it is axiomatic that the prosecutor cannot elicit evidence of the accused’s bad character. Florida Statutes § 90.404 (2003) provides in pertinent part:
(1) Character evidence generally. — Evidence of a person’s character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion, except:
(a) Character of accused. — Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the trait.
The state cannot introduce evidence attacking the character of the accused during its case in chief, since the accused must first put his good character in issue. See Smart v. State, 596 So.2d 786 (Fla. 3d DCA 1992). An accused puts his character at issue by attempting to demonstrate his non-violent character; the state is then permitted to offer evidence to re *1117 but those assertions. Squires v. State, 450 So.2d 208, 210-11 (Fla.1984). When evidence of the character of a person or of a trait of his character is admissible, proof may be made by testimony about his reputation. Fla. Stat. § 90.405(1) (2003). Additionally, the Florida Evidence Code allows evidence of reputation of a person’s character among his associates or in the community to be admitted as an exception to the hearsay rule. Fla. Stat. § 90.803(21) (2003); Webster v. State, 500 So.2d 285, 287 (Fla. 1st DCA 1986).
In the present case, A.K.’s argument is not that the state improperly introduced character evidence during its case in chief, but, rather that he did not offer any testimony concerning his good character, and thus did not open the door to the prosecution to inquire during cross-examination about his reputation for bad character, i.e., whether his friends consider him a bully.
The state admits that “the State’s inquiry regarding Appellant’s reputation as a bully was not to rebut any positive character evidence.” (emphasis added). However, the state asserts that its inquiry regarding A.K.’s reputation as a bully was a reasonable characterization in light of the testimony A.K. provided during direct examination that he had acted in self-defense but that he was angry from the alleged incident with the crossing guard hitting him with his sign on the previous day. The state does not explain the reasoning behind its argument and does not claim that A.K.’s direct examination testimony constituted “[ejvidence of a pertinent trait of character offered by an accused,” which the prosecution would then be permitted to introduce character evidence to rebut. See § 90.404(l)(a). Therefore, we hold that the trial court erred by admitting testimony regarding A.K.’s reputation as a bully.
The inquiry does not end there, as we must determine whether the error was harmless. “If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” State v. Lee, 531 So.2d 133, 136 (Fla.1988). It is the state’s burden to prove that an error was harmless. See, e.g., Knowles v. State, 848 So.2d 1055, 1058 (Fla.2003). As the Florida Supreme Court explained in State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986):
The [harmless error] test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.
We hold that any error in admitting testimony regarding A.K.’s reputation as a bully was harmless. In Picoriello v. State, 727 So.2d 339 (Fla. 4th DCA 1999), this court held that evidence that the defendant had made false accusations was improperly admitted to rebut his self-defense claim. This court concluded that the error in Picoriello, if any, was harmless because even though it could have arguably affected the jury’s judgment, the defehdant’s self-defense claim was not believable. Id. Similarly, in the present case, the error, if any, was harmless because the trial court found that A.K.’s self-defense claim was not believable. The trial court discussed at length that it found that all of the state’s witnesses were extremely credible because their testimony was very consistent and did not indicate embellishment, prejudice or bias. The judge also described multiple instances in which he thought A.K. was lying and remarked that *1118 his testimony was not even consistent with the defense’s theory of self-defense, since A.K. testified he did not strike the crossing guard or fight back, not even in self-defense.
The harmless nature of this evidence is further emphasized by the fact that A.K admitted to several facts during trial to independently support his reputation as a bully. A.K. admitted that he cussed at the crossing guard and attempted to harass and heckle him. See Dennis v. State, 817 So.2d 741, 763 (Fla.2002) (Erroneous admission of character evidence as to the defendant’s jealous character was harmless, where the testimony on that topic was extremely limited and moreover, the jury properly heard substantial evidence of incidents in which the defendant’s jealousy manifested itself.). Based on the foregoing, we hold that the error was harmless and affirm the decision below.
Lastly, the trial court did not abuse its discretion by refusing to grant a mistrial after it granted the state’s and defense’s joint motion to strike A.K.’s testimony that he was in a sexual offender program. A ruling on a motion for mistrial is within the sound discretion of the trial court, and such motions should be granted only when it is necessary to insure that the defendant receives a fair trial. Gorby v. State, 630 So.2d 544, 547 (Fla.1993). “Moreover, a mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial.” Duest v. State, 462 So.2d 446, 448 (Fla.1985).
If it had been a jury trial rather than a bench trial, the judge would clearly have been required to give the jury a curative instruction and granting a mistrial, in fact, might have been necessary to insure that A.K. received a fair trial. See Gorby, 630 So.2d at 547. However, in the present bench trial case the court emphasized that the stricken testimony would not have any influence on him: “I think if it was in front of a jury, you’d probably have an arguable motion, but, you know, the benefit of having a court here, it’s irrelevant. It means nothing to me.”
Accordingly, we affirm the delinquency disposition order in all regards.
WARNER and HAZOURI, JJ„ concur.