917 So.2d 968 (2005)
Santiago VILLANUEVA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-1654.
District Court of Appeal of Florida, Third District.
December 28, 2005.
*969 Bennett H. Brummer, Public Defender, and Todd G. Scher, Special Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Meredith L. Balo, Assistant Attorney General, for appellee.
Before LEVY, SHEPHERD, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The defendant, Santiago Villanueva, was found guilty of attempted second degree murder with a firearm. While the firearm was discharged, the jury concluded that it was not discharged during the commission of the crime. We affirm the judgment and sentence, but remand for the correction of a scrivener's error.
The evidence is as follows. Gilberto Guajardo ("victim") testified that when he saw the defendant at a restaurant, he approached him and began to shake the defendant's hand, but let go when the defendant began to yank on his hand. The victim then called the defendant a few names, left the restaurant, and went to a bar. A few minutes later, the defendant walked into the bar and asked the victim to go outside, but the victim refused. When the victim went to the bathroom, the defendant followed him, pointed a gun at him, and called him a name. The victim began walking towards the defendant and told him, "If you pull the trigger, make sure you kill me. If you leave me alive, I'm going to do something to you." When asked by the prosecutor why he walked towards the defendant, the victim stated, "Because he  I've heard of him, that he likes to scare people with his gun."
The defense objected to the above statement as improper character evidence and moved for a mistrial. The State agreed that the statement was improper and requested that the trial court give a curative *970 instruction. While the defense's position was that the error could not be cured, it agreed that a curative instruction should be given, stating: "I don't think you can cure it. So I think if that's what the Court wants to do, just tell them to disregard it. But I don't think that will cure the violation." The trial court gave the following curative instruction: "I'm going to instruct you to disregard the witness' last statement. Give it no value whatsoever. And we'll proceed from here forward. And I'm going to ask you to assume that it was never made, so it will have no value whatsoever."
Following the curative instruction, the victim testified that during this confrontation in the bathroom, he was able to slap the gun from the defendant's hand, at which point, the gun discharged, and he and the defendant wrestled for it. When the defendant seized the gun, the victim got the defendant into a choke hold and dragged him to the parking lot where the defendant eventually dropped the gun after being pepper sprayed by the owner of the bar.
The owner of the bar testified that after the defendant dropped the gun, he told him to leave "because he will always come there. He would come look for trouble." Defense counsel objected and again moved for a mistrial. The trial court sustained the objection, denied the motion for mistrial, and gave the following curative instruction: "The jurors will be instructed to disregard the statement by the last witness about the reason why he asked the defendant to leave. Again, you will treat it as if you had not heard it. Thank you."
Lesiano Sanchez, a crime scene technician, testified that he retrieved a five-shot revolver at the bar which contained four live rounds and a fired casing. A projectile he recovered from the restroom floor was examined by a criminalist who testified that it was fired from the weapon seized at the bar.
The defendant gave several conflicting statements to law enforcement regarding what occurred that night. The first statement was made to Officer Trigoura. Officer Trigoura testified that while he was investigating the shooting at the bar, he received a call that there was a man bleeding at a nearby gas station. He responded to the gas station where he found the defendant with a gunshot wound to his leg. The defendant's explanation to him was that he had been shot while being robbed by three men outside of the bar.
Contrary to the statement that the defendant gave to Officer Trigoura, the defendant told Detective Giovane, after being advised of his rights per Miranda, that after leaving the bathroom at the bar, a man named "Raul Rivas" and another man followed him to the gas station, robbed him of $200, and was shot by Rivas.
During the ride from the hospital to the jail, Detective Dominguez again advised the defendant of his Miranda rights and obtained yet another version of the events by the defendant. The defendant told Detective Dominguez that he went into the bathroom at the bar to sell a gun to the victim; that the victim took the gun from him, punched him in the head, and shot him; and that after the shooting, he ran to the gas station. When Detective Dominguez confronted him with the story that he had given Detective Giovane, wherein he claimed he had been robbed (and shot by Raul Rivas, not the victim), the defendant explained that he was "rolled" because $200 was taken from him.
The defendant raises two grounds in this appeal. We address his second point on appeal first as the State concedes, and we agree, that the judgment entered on July *971 29, 2004, contains a scrivener's error. The judgment reflects that the defendant pled guilty when he was in fact convicted after a jury trial of attempted second degree murder with a firearm. Therefore, we remand for correction of the scrivener's error, and now turn to the gravamen of the defendant's appeal.
The defendant contends that the trial court abused its discretion in denying his motions for mistrial where the State, through two separate witnesses, introduced impermissible and prejudicial evidence of the defendant's bad character. While we agree that the comments were improper, we find that the trial court did not abuse its discretion in denying the motions for mistrial where the trial court recognized the errors, sustained the objections, and gave sufficient curative instructions.
The two improper comments referred to by the defendant were made by State witnesses during the State's case-in-chief. In response to the prosecutor's question as to why he walked toward the defendant who was holding a gun, the victim responded: "Because he  I've heard of him, that he likes to scare people with his gun." The second comment was made by the owner of the bar when he testified that he told the defendant to leave "because he will always come there. He would come look for trouble."
Both statements constitute an attack of the defendant's character and were improper as the defendant did not place his character in issue. See A.K. v. State, 898 So.2d 1112, 1116 (Fla. 4th DCA 2005)("The state cannot introduce evidence attacking the character of the accused during its case in chief, since the accused must first put his good character in issue."); Smart v. State, 596 So.2d 786, 787 (Fla. 3d DCA 1992)(holding that arresting officer's comment regarding his past contact with the defendant was inadmissible because comment was "solely relevant to establish the defendant's bad character"). Following each comment, the trial court correctly sustained the objection and instructed the jury to disregard the comment and to treat the comment as if it had never been made.
The defendant urges this court to find that the comments were so prejudicial that the curative instructions given by the trial court could not cure the error and thus, the trial court abused its discretion in denying his motions for mistrial. The defendant's claim that the prejudice was too great to cure appears to be based upon two theories: (1) that because the comments referred to the defendant's criminal history, regardless of the curative instruction given, the error could not be cured, and (2) because the State's evidence was "anything but overwhelming" and the case essentially "came down" to a credibility battle between the victim's version of the events and his, that the State could not establish that the improper comments were harmless beyond a reasonable doubt.
As to the defendant's first theory, that based upon the nature of the improper comments, the error was too prejudicial to cure, the defendant relies upon Brooks v. State, 868 So.2d 643 (Fla. 2d DCA 2004), Henderson v. State, 789 So.2d 1016 (Fla. 2d DCA 2000), and Finklea v. State, 471 So.2d 596 (Fla. 1st DCA 1985). In Brooks, the Second District held that "[t]he improper admission of evidence concerning a defendant's prior criminal history is frequently too prejudicial for the jury to disregard, regardless of any curative instruction given by the trial court," Brooks, 868 So.2d at 645 (quoting Henderson v. State, 789 So.2d 1016, 1018 (Fla. 2d DCA 2000)), and in Finklea, the First District held that "[d]espite cautionary instructions, the introduction of a prior unrelated criminal act *972 is too prejudicial for the jury to disregard." Finklea, 471 So.2d at 597.
We are unpersuaded by this argument as we conclude that the defendant's reliance upon these cases is misplaced and secondly, we disagree that the status of the law requires such a finding. The defendant's reliance upon Brooks, Henderson, and Finklea is misplaced because in each case, the prejudicial comment was regarding the defendant's criminal history. In the instant case, the improper comments made no reference to any criminal history of the defendant, and instead are more properly characterized as improper character evidence. We, therefore, find that reliance upon the cited-to cases is misplaced, and reliance upon Bacallao v. State, 513 So.2d 738 (Fla. 3d DCA 1987), to be far more appropriate. In Bacallao, a witness stated that he had been informed that the defendant was "a dangerous person." This court held that the trial court's curative instruction was sufficient to cure any prejudice caused by the witness's comment, and that any error resulting from the comment was harmless error based upon the overwhelming evidence of the defendant's guilt. Bacallao, 513 So.2d at 738.
Even if we were to find that the complained-of comments referred to criminal conduct as the defendant claims, we would not find Brooks, Henderson, or Finklea dispositive, as this court has found that a curative instruction can dissipate the prejudicial effect of a witness's comment even when the comment refers to the defendant's criminal history. See Marshall v. State, 439 So.2d 973 (Fla. 3d DCA 1983)(holding that curative instruction dissipated any prejudice stemming from lab technician's testimony that defendant's fingerprints matched a set of fingerprints taken from a master file of persons booked in county jail); Williams v. State, 354 So.2d 112 (Fla. 3d DCA 1978)(holding that reference by witness that defendant had previously been in prison was cured by trial court's instruction).
The defendant's second theory: that because the State's case was not overwhelming and "came down" to a credibility battle between the defendant and the victim's version of the events, the State cannot establish that the comments were harmless beyond a reasonable doubt, is likewise unsupported by the law or the record.
In both instances when the improper comment was made, the trial court immediately recognized the error, sustained the defendant's objection, and gave a curative instruction. As we conclude that the instruction given in each instance: that the jury was to disregard the statement, give it no value whatsoever, and to assume that the statement was never made; was sufficient, the State does not have the burden to demonstrate that the comments were harmless beyond a reasonable doubt, because a harmless analysis is not required. See Smithers v. State, 826 So.2d 916, 930 (Fla.2002)("The use of a harmless error analysis under State v. DiGuilio, 491 So.2d 1129 (Fla.1986), is not necessary where `the trial court recognized the error, sustained the objection and gave a curative instruction.'")(quoting Gore v. State, 784 So.2d 418, 428 (Fla.2001)); see also Chamberlain v. State, 881 So.2d 1087, 1098 (Fla.2004), cert. denied, ___ U.S. ___, 125 S.Ct. 1669, 161 L.Ed.2d 495 (2005).
Contrary to the defendant's argument that a harmless error analysis is required, the Florida Supreme Court has specifically held that rather than a harmless error analysis, "the correct appellate standard of review is abuse of discretion." Chamberlain, 881 So.2d at 1098 (quoting Smithers, 826 So.2d at 930).
*973 Applying this standard to the instant case, a motion for mistrial should be granted only when the complained-of error is so prejudicial that it vitiates the entire trial. Overton v. State, 801 So.2d 877, 897 (Fla.2001), cert. denied, 535 U.S. 1062, 122 S.Ct. 1929, 152 L.Ed.2d 835 (2002); Brooks v. State, 868 So.2d 643, 645 (Fla. 2d DCA 2004)("Reviewed for abuse of discretion, a motion for mistrial should be granted only when the error is so prejudicial as to vitiate the entire trial.").
The evidence did, as the defendant suggests, evolve into a credibility contest. On the one hand there was the testimony of the victim that he had an altercation with the defendant in the bathroom of the bar wherein the defendant pointed a gun at him, and that during the struggle which ensued, the gun went off striking the defendant in the leg. The victim was eventually able to place the defendant in a choke hold and drag him into the parking lot where he was disarmed by the owner of the bar who sprayed the defendant with pepper spray. When the police arrived to investigate, the victim told them what occurred. His statement on the scene was consistent with the testimony he gave in court and was supported by the observations of the owner and the physical evidence.
On the other hand, the defendant gave several inconsistent statements. First, he told Officer Trigoura that he had been robbed by three men outside of the bar. At the hospital, he told Detective Giovane that after leaving the bar, he was followed to a gas station where he was robbed by "Raul Rivas" and another man, and that Rivas shot him. While being transported from the hospital to the jail, he told Detective Dominguez yet another story. He told her that, instead of being robbed outside of the bar by three men, as he told Officer Trigoura; or was followed to a gas station where he was robbed by two men and shot by "Raul Rivas," as he told Detective Giovane; he went into the bathroom at the bar to sell the victim a gun, that the victim took the gun from him, punched him in the head, and shot him. As the defendant's statements were "a work in progress" changing each time he spoke to a different officer, we conclude that the complained-of statements had little impact, if any, upon the defendant's credibility. Based upon the objections which were sustained; the curative instructions given; the fact that the State did not refer to the objectionable comments again; and the defendant's multiple inconsistent statements, we conclude that the trial court did not abuse its discretion in denying the defendant's motions for mistrial.
Affirmed and remanded for correction of the scrivener's error contained in the judgment. The judgment should reflect that the defendant's conviction was based upon a jury finding, not a plea of guilty.