45 So.3d 804 (2010)
Jean Claude BIENAIME, Appellant,
v.
STATE of Florida, Appellee.
No. 4D08-2058.
District Court of Appeal of Florida, Fourth District.
July 7, 2010.
*805 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his conviction and sentence on charges of false imprisonment, aggravated assault with a firearm, and battery involving a domestic violence incident. He argues that the trial court erred in admitting an officer's testimony as to what the victim told her, as an excited *806 utterance and in denying the motions for mistrial. We agree and reverse.
The sequence of events giving rise to the case began with an argument between the defendant husband and the victim wife over the use of a car. When the victim left in the car, the defendant followed her. When the victim became aware of the defendant behind her, she drove to the Fort Lauderdale Police Station and parked the car in front of the lobby. The defendant pulled in behind her, broke the window of the victim's car, began to choke her, and then dragged her out of her car and into his car.
The defendant drove them home and kept her in their bedroom at gunpoint. During the three-hour ordeal, he repeatedly hit her and threatened her with a gun. When she promised not to call the police, he allowed her to leave and made a comment about going back to prison. She left the house, and went to a neighbor's home where she called a cab. The cab drove her to her car parked at the police station.
At trial, the State called an officer who spoke with the victim at the police station after she was treated by the paramedics. The State attempted to lay a foundation to admit what the victim had told the officer as an excited utterance. The court asked the State to proffer the evidence. Defense counsel objected on the grounds of hearsay and Crawford v. Washington.[1] The trial court found that the State had laid the proper predicate and overruled the objections.
The officer testified that she came into contact with the victim around 3:25 p.m. on the day of the incident. The victim was upset, shaken, scared, and "wanted to tell what happened that day." The State then asked the officer what the victim told her. She repeated the sequence of events leading up to the victim's release. At that point, she testified that the victim said "finally after about three hours after him [the defendant] doing this to me he said, okay, I'm ready to go back to prison, go ahead, and he leaves and lets her out the door." Defense counsel again objected and requested a sidebar, but the trial court said it would "entertain it later."
At the conclusion of the direct examination, the court conducted a sidebar. Defense counsel moved for a mistrial based upon the officer's testimony concerning the victim's statements in general and specifically as it related to the defendant's comment concerning prison. Defense counsel argued that the statement indicated the defendant was a convicted felon. The trial court denied the motion. The court then asked if defense counsel wanted a curative instruction. Defense counsel deferred to the court, but indicated the only way to cure the prejudice would be a mistrial. The court denied the motion for mistrial.
The following week, the trial court sua sponte returned to the issue.
I want to address that matter. Of course, this Court did, over the defense objection, permit [the officer] to testify with respect to an excited utterance made by the complainant in the matter. I found that proper predicate had been laid for it and that it clearly was an excited utterance, and Crawford versus Washington did impact its admissibility. I was wrong.
I've done additional research. I do now find that it was error to permit the admission in evidence of this excited utterance.....
If [the victim's] testimony is consistent with the testimony of [the officer] by any measure, it would be cumulative and corroborative of the officer's testimony, *807 and I'm confident the appellate court would find the admission in error of the excited utterance to be harmless error.
On the other hand, of course, should she repudiate the portions of the testimony of the officer or testify differently, there would be a serious problem, and, in my view, I would be pleased to declare a mistrial in the matter should the defense wish to renew its motion earlier denied. So there we are.
The State then called the victim to testify. She testified that she did not want to be there and asked repeatedly if she could go home. Reluctantly, she restated the events with the following differences. When she spoke to the defendant in the police parking lot, he did not seem mad or upset. The defendant did threaten to shoot her, but she did not believe him. She promised she would not call the police and the defendant let her go. The trial court then instructed the State to inquire about the prison statement over the State's protest.[2]
STATE: Judge, I understand, but at the same time I'm not, I don't want a mistrial through her as to
COURT: A mistrial will occur if you don't cure the error you caused me to commit by admitting in evidence this excited utterance. That's what will cause a mistrial, not asking this question. You need to ask, you need to ask the question. That's as far as I'm going to go. Thank you.
The following testimony then took place:
STATE: [A]fter the defendant said that he was going to kill you, kill the baby, and then kill himself, did he say anything else to you?
[The Victim]: Yeah, he said he's not going back to prison.
(Emphasis added).
During the charge conference, the trial court again offered a curative instruction. Fearing to draw more attention to the matter, defense counsel declined a curative instruction, but did renew the request for a mistrial. The trial court denied the motion.
On appeal, the defendant argues the trial court erred in allowing the officer to testify to hearsay regarding the victim's statement to her and in denying motions for mistrial when the trial court twice admitted the defendant's statement concerning prison. The State responds that the trial court did not abuse its discretion in admitting the hearsay because the victim's statement constituted an excited utterance and did not improperly bolster the victim's testimony. The State argues the trial court did not err in denying the defendant's motion for mistrial as the "prison" statement was isolated and inadvertent, and defense counsel refused any curative instruction. Alternatively, if there was error, it was harmless beyond a reasonable doubt.
We review trial court rulings on the admission of evidence for an abuse of discretion. Elysee v. State, 920 So.2d 1205, 1207 (Fla. 4th DCA 2006). We similarly review a trial court's denial of a motion for mistrial for an abuse of discretion. Goodwin v. State, 751 So.2d 537, 546 (Fla.1999).
An excited utterance is "[a] statement... relating to a startling event or condition made while the declarant [is] under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat. (2008).

*808 While an excited utterance need not be contemporaneous to the event, it must be made while the declarant is under the stress of the startling event and without time for reflection.... "[W]here the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process."
Hutchinson v. State, 882 So.2d 943, 951-52 (Fla.2004), abrogated on other grounds by Deparvine v. State, 995 So.2d 351 (Fla. 2008) (quoting State v. Jano, 524 So.2d 660, 661 (Fla.1988) (quoting Edward W. Cleary, McCormick on Evidence § 297, at 856 (3d ed. 1984))). Although not determinative, the length of time between the statement and the startling event may be considered. Rivera v. State, 718 So.2d 856, 858 (Fla. 4th DCA 1998).
The defendant claims the admission of the victim's statements through the officer was error for three reasons: (1) the statement did not qualify as an excited utterance; (2) the statement violated Crawford v. Washington, because the victim was available; and (3) the statement was given in a narrative form. See Mariano v. State, 933 So.2d 111, 117 (Fla. 4th DCA 2006) (The narrative form of the statement "in and of itself indicates that the victim is reflecting upon the events of the evening.").
As our supreme court has repeatedly reminded us, to be an excited utterance, "[t]he statement must be made without time for reflective thought because it is the lack of time to contrive or misrepresent the facts that provides the reliability for such statements." Hayward v. State, 24 So.3d 17, 29 (Fla.2009). Here, the officer testified that she encountered the victim at the station after the paramedics treated her. The ordeal began around 11:30 a.m. and the victim was kept in the bedroom for approximately three and a half hours. Upon her release, the victim went to a neighbor's house, used the phone, called a cab, and was driven to the police station to retrieve her car. She had been at the police station being attended to by paramedics for ten to fifteen minutes before the officer spoke with her. Her statement was made in a narrative form. All of these factors indicate that the victim had time to reflect. It was error to admit the victim's statement as an excited utterance.
Compound that error with the fact that the victim's testimony about the event, while similar, was not the same. The victim claimed the defendant had not been mad or upset when he approached her at the police station even though she admitted that he broke the car window. Though the defendant threatened to shoot her, she did not believe him. The defendant let her go when she promised not to call the police. Perhaps most significantly, she testified that the defendant stated that he was not going back to prison. This is exactly the opposite of what the officer relayed. More importantly, it was a second reference to prison, made at the insistence of the trial court, leading the jury to believe the defendant was a convicted felon.
"Evidence of any crime committed by a defendant, other than the crime for which the defendant is on trial, is inadmissible in a criminal case when its sole relevance is to attack the character of the defendant." Cornatezer v. State, 736 So.2d 1217, 1218 (Fla. 5th DCA 1999). "The improper admission of evidence concerning a defendant's prior criminal history is frequently too prejudicial for the jury to disregard, regardless of any curative instruction given by the trial court. When *809 any curative instruction would be insufficient, the trial court should grant a mistrial." Henderson v. State, 789 So.2d 1016, 1018 (Fla. 2d DCA 2000). That precise level of prejudice was injected into this trial.
We therefore reverse on two grounds. First, the victim's statements to the officer did not constitute an excited utterance as sufficient time had passed to allow the victim to reflect on what had transpired. The trial court recognized its error, but then allowed the trial to continue in hopes the victim would testify consistently rendering the error harmless. However, quite the opposite occurred. Second, the trial court should have granted the mistrial based upon having twice improperly admitted the "prison" statement. Without doubt, the prison testimony implied the defendant was a convicted felon. These errors were not harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Reversed and remanded for a new trial
GROSS, C.J., concurs.
CIKLIN, J., dissents in part and concurs in part with opinion.
CIKLIN, J., dissenting in part and concurring in part.
I must respectfully dissent from that portion of the majority opinion finding that the victim's statements did not constitute an excited utterance.
The crucial factor in finding that a statement constitutes an excited utterance is the "state of mind" of the declarant, which is "a preliminary fact to be determined by the trial court." Elysee, 920 So.2d at 1207. In determining whether the necessary mental state exists, it is essential to consider the nature of the events leading up to the statementas testified to not only by the victimbut also those who had the opportunity to personally observe the victim.
Here the victim was physically and violently abducted from her vehicle and then held captive at gunpoint, amid repeated physical abuse, for three and a half hours straight. During this unfathomable imprisonment, Bienaime continually hit the victim with the butt of an automatic handgun. As the infliction of terror continued, Bienaime told the victim that he was going to shoot her and the baby they thought, albeit mistakenly, she was carrying. At least one time during the ordeal, he put a pillow over her head and put the gun to the pillow. Bienaime frighteningly assured the victim that he was ready to die so nothing mattered. Then, unpredictably, Bienaime spontaneously let the victim go. Without knowing what Bienaime would do next, the victim fled to her neighbor's house and called a cab to go to the police station. There is no evidence that she talked to her neighbor about the event or to anyone else. The five minute ride to the police station was then met with a recognizable need for emergency medical assistance, immediately after which she was first able to express what happened to her.
The stress of the parking lot abduction was met with prolonged captivity, cruel mental and physical abuse, and the threat of a bullet to the head, which in turn was met with the need for medical assistance, culminating in an excited and fearful (rather than reflective) state when given the first opportunity to talk to a law enforcement officer:
Q: When you first came into contact with her, can you describe to the members of the jury what her demeanor was like?
A: Very upset, shaken, scared, just wanted to tell what had happened to her that day.

*810 Q: And what, if any, observations did you make of her person?
A: I did see some injuries to her face area and just that she was very upset, and then I talked to her further to get information from her.
Q: And the whole time that you were speaking with her was she upset?
A: Yes. She wanted help.
. . .
Q: And were you able to determine if she was upset from the events that she was telling you?
A: That's what I believe that she was upset about what had happened to her that day.
. . .
Q: And when you spoke with her, she was upset and she was scared; is that correct?
A: Absolutely, asking for help.
The victim's conversation with the officer represented the first time she could express her emotions about the tumultuous events which had just occurred. The only time that accrued between her abrupt release by Bienaime and her statement to the police was her flight to the neighbor's house, the phone call to the cab, the five minute drive to the police station and treatment by paramedics for about ten to fifteen minutes. See Lopez v. State, 888 So.2d 693, 697 (Fla. 1st DCA 2004) ("The courts have declined to set a fixed amount of time that is sufficient for reflection, but have reasoned instead that the requisite time is a subjective matter that depends on the circumstances."); see also Edmond v. State, 559 So.2d 85, 86 (Fla. 3d DCA 1990) (upholding the admissibility of "an emotional description of the assailant" given by a "frightened" eleven-year-old boy two to three hours after the incident where "the child was excited, perhaps even hysterical, at the time his statements were made").
While the victim may have given, as the majority characterizes it, a "narrative" answer to the officer's questions, it did not indicate the reflective thought process necessary to preclude evidentiary admission. To compartmentalize the victim's description of her ordeal as narrative and thus automatically render it inadmissible is not, I respectfully urge, the state of the law. The violent abduction, three and a half hours of brutal captivity and then silence about the horrifying eventuntil her statements to the officerall support the trial court's finding that the statements by the victim were made while she remained under the stress of it.
I do not believe the majority's finding of reflective thought is consistent with the victim's visibly emotional state, the series of petrifying events just visited upon her, and the overwhelming intensity of the victim's nightmare itself such to conclude that the trial court abused its discretion. The trial court's ruling comes to us clothed with a presumption of correctness. We should not disturb the presumption.
NOTES
[1] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] The defendant also argues the trial court departed from its neutral position when it instructed the State to question the victim about the prison statement. Based on our decision, it is unnecessary for us to reach that issue.